IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SPARKLE POP LLC, a Delaware limited liability company,<br><br>    Plaintiff,<br><br>v.<br><br>ALLIANCE ENTERTAINMENT HOLDING CORPORATION, a Delaware corporation and ALLIANCE ENTERTAINMENT, LLC, a Delaware limited liability company,<br><br>    Defendants. | Adv. Proc. No. 25-00157<br><br>Bankruptcy No. 25-10308 (DER)<br><br>**DECLARATION OF JOEL WEINSHANKER IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER** |

### DECLARATION OF JOEL WEINSHANKER

I, Joel Weinshanker, declare as follows:

1. I am over 18 and competent to make this declaration. I submit this declaration in support of Sparkle Pop LLC's Complaint and Motion for Preliminary Injunction and Temporary Restraining Order ("Motion")[1]. I have personal knowledge of the facts stated herein and they are true and correct. If called as a witness, I could and would testify to the facts stated herein.

2. I am the Chief Executive Officer ("CEO") of Ad Populum, LLC ("Ad Populum"), a Delaware limited liability company. Ad Populum was formed on August 24, 2022, as a holding company for a variety of consumer products companies which I owned or controlled separately before the formation of Ad Populum. I became the CEO of Ad Populum upon its formation and remain its CEO to this day.

3. I am the sole manager of Sparkle Pop, LLC ("Sparkle Pop"), a Delaware limited liability company and wholly-owned subsidiary of Ad Populum. Sparkle Pop was formed on April

---

[1] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Complaint and Motion.

4, 2025, to serve as a holding company for a variety of assets purchased from Diamond Comic Distributors, Inc. and its some of its affiliates ("Diamond Comic"). I became the sole manager of Sparkle Pop upon its formation and remain its sole manager to this day.

4. In my role as CEO of Ad Populum and sole manager of Sparkle Pop, I am responsible for the management and direction of both companies including, but not limited to, decision making pertaining to corporate acquisitions.

5. On January 14, 2025, Diamond Comic and certain related affiliates filed a voluntary petition for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Maryland.

6. Sparkle Pop purchased certain assets of Diamond Comic and its affiliates (the "Asset Purchase") via an asset purchase agreement signed on April 27, 2025 (the "APA") and approved on May 1, 2025 by the Sale Order (the "Sale Order") issued by the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"). The transaction formally closed on May 15, 2025. The APA was enclosed in the Sale Order and filed on the docket in the Bankruptcy Court. A true and correct copy of the Sale Order attaching the APA is attached hereto as **Exhibit A**.

7. The APA referenced a transition services agreement between Sparkle Pop and Diamond Comic (the "TSA"). Pursuant to the TSA, as is common for transition services agreement following an asset purchase agreement, Diamond Comic agreed to keep business critical personnel and processes running "as is" during the transition period. For example, Diamond Comic agreed to minimize disruption in business operations by providing access to personnel and systems and to safeguard its confidential information. Sparkle Pop and Diamond Comic executed the TSA on May 15, 2025. A true and correct copy of the TSA is attached hereto as **Exhibit B**.

8. I personally negotiated the business terms of the APA and TSA and signed on behalf of Ad Populum and Sparkle Pop.

9. Raymond James & Associates, Inc. ("Raymond James"), the investment banker hired by Diamond Comic, required all prospective bidders to sign a non-disclosure agreement (the

"NDA") before permitting due diligence and soliciting bids from prospective bidders for the Diamond Comic assets. Raymond James indicated that this included Alliance.

10. I signed the non-disclosure agreement on October 26, 2024 (the "NDA"), between Ad Populum and Raymond James as a representative and on behalf of Diamond Comic. A true and correct copy of the executed NDA signed by Ad Populum and Raymond James is attached hereto as **Exhibit C**.

11. The NDA inures to the benefit of Diamond Comic and Raymond James and their respective assigns.

12. The prospective bidders for the Diamond Comic assets were given access to a data room containing key confidential information and trade secrets pertaining to the Diamond Comic business under consideration for acquisition (the "Confidential Information"). This includes Alliance Entertainment ("AENT"), a subsidiary of Alliance Entertainment Holding Corporation, a competing bidder for the Diamond Comic assets.

13. The NDA requires that all confidential information of Diamond Comic be kept confidential and used solely for the purpose of evaluating a potential transaction and that all such information be returned or destroyed if a transaction was not consummated. The NDA also bars all signatories from soliciting for employment or hiring any employee of Diamond Comic or its subsidiaries that it either came into contact with or that it subsequently learned about during the term of the NDA.

14. Raymond James declared AENT the original winning bidder for the Diamond Comic assets on March 24, 2025. Sparkle Pop was the back-up bid in a joint bid with Universal Distributors, Inc. ("Universal"). AENT failed to execute an asset purchase agreement for its bid within the deadline entered by the Bankruptcy Court. Raymond James and Diamond Comic subsequently approached Universal and Sparkle Pop to execute on the back-up bid.

15. On April 6, 2025, AENT filed an adversary complaint Diamond Comic and certain of its affiliates, seeking to be reinstated as the winning bidder. The Bankruptcy Court accepted AENT's position. AENT executed an asset purchase agreement with Diamond Comic with a

proposed closing date of April 25, 2025. On April 24, 2025, one day before closing, AENT terminated its asset purchase agreement with Diamond Comic and pulled its bid. Raymond James and Diamond Comic once again asked Sparkle Pop and Universal to revise its bid, leading to the Asset Purchase pursuant to the APA.

16. Sparkle Pop offered substantial consideration in the APA to close the deal because of the value we place it placed on the Diamond Comic assets, including its proprietary business knowledge, established relationships, and trade secrets. Sparkle Pop relied on the fact that Alliance had signed an NDA and, thus, was legally barred from hiring Diamond Comic employees or from attempting to exploit confidential information it learned from Diamond Comic during the sale process.

17. I called Chuck Parker, the President of Diamond Comic on May 11, 2025 to inform him that Mike Schimmel, the head of sales at Diamond Comic was resigning on May 16, 2025, only one day after the APA had closed. Mr. Parker subsequently informed me on May 19, 2025 that Mr. Schimmel had accepted an employment offer with AENT. Mr. Parker subsequently also told me that, on May 27, six other Diamond Comic employees, three each in the sales and purchasing departments at Diamond Comic, gave notice of their intent to resign from the company at the end of the week, to join Mike Schimmel at AENT. This included the Manager of Sales, Director of Ecommerce Sales, Business Development Manager, the second in command in the purchasing department, a Purchasing Manager, and an Assistant Manager in the merchandise team. Mr. Parker indicated that it appeared that the resignations of the seven departing Diamond Comic employees were coordinated. Mr. Parker confirmed to me that each of the seven departing Diamond Comic employees had access to Confidential Information, and that their access to said Confidential Information was governed by the Diamond Comic employee manual ("Employee Manual"), which contained a section on Non-Disclosure for the Confidential Information, including but not limited to: compensation data, customer lists and information, financial information, marketing strategies, contracts, pending projects and proposals, and vendor lists and information. The Employee Manual also contained a section about conflicts of interest. Finally,

Mr. Parker confirmed to me that all seven departing Diamond Comic employees had reviewed and acknowledged the Employee Handbook. A true and correct copy of the Employee Manual is attached hereto as **Exhibit D**.

18. Mr. Parker informed me that Joe Lunday, one of seven departing Diamond Comic employees, on his last day with Diamond Comic on May 30, 2025, had a call with Diamond Comic's Amazon representative Jack Agnew. On that call, Mr. Lunday informed Mr. Agnew that it was his last day with Diamond and that he was moving over to AENT in a similar role as his role at Diamond. Mr. Lunday told Mr. Agnew that AENT was looking to build out their collectibles program, which would put it in direct competition with Diamond Comic. Mr. Lunday then told Mr. Agnew that he hoped that Amazon and AENT would be working together on collectibles in the future.

19. The Amazon representative confirmed that Mr. Lunday told him that all: (a) Diamond Comic employees were jumping ship; and (b) going forward, Amazon should buy the items they had been buying from Diamond Comic from Alliance instead.

20. Sparkle Pop has grave concerns concerning the use by Defendants of the Diamond Comic Confidential Information and the hiring by Defendant AENT of the seven departing Diamond Comic employees in direct violation of the NDA. These actions have disrupted and undermined the continuing Diamond Comic business acquired by Sparkle Pop, severely degraded the value of the assets Sparkle Pop purchased fairly in the bankruptcy auction process. Had I believed that AENT would violate the NDA, I would not have directed Sparkle Pop to compete in the bidding process with AENT.

21. At Ad Populum we believe in revitalizing struggling companies through an infusion of resources, fresh perspectives, and synergy by and between the various Ad Populum affiliates. It was always our intention to do the same with such a storied distribution business as Diamond Comic, who had been a long-time customer of several Ad Populum affiliates. The role played by seven of the leading employees in the sales and purchasing department of a distribution business cannot be overstated. Similarly, the importance of non-disclosure of Confidential Information

amongst competitors in a market segment is critical. Unless Alliance is required to immediately destroy of all Confidential Information and the refrain from employing any of the seven departing Diamond Comic employees Sparkle Pop will suffer irreparable and severe damage to its business.

I declare under penalty of perjury under the laws of the State of Maryland that the foregoing is true and correct.

Executed this __9__ day of June 2025, at __Hillside__ [city], __NJ__ [state].

_____
Joel Weinshanker (Jun 9, 2025 09:02 EDT)
Joel Weinshanker