**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| In re | Case No. 25-10308 (DER) |
| Diamond Comic Distributors, Inc. *et al.*, | Chapter 11 |
| Debtors. | (Jointly Administered) |
| Sparkle Pop LLC, a Delaware Limited Liability Company, | |
| Plaintiff, | Adv. Proc. No. 25-00157 |
| v. | |
| Alliance Entertainment Holding Corporation, a Delaware Corporation, and Alliance Entertainment, LLC, a Delaware Limited Liability Company, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........ 1
STATEMENT OF FACTS ........ 3
I. Background ........ 3
II. Sparkle Pop Purchases the Debtors' Assets ........ 4
III. DCD Employees Look for Alternative Employment ........ 5
IV. AENT Executes a Non-Disclosure/Non-Solicitation Agreement Solely for the Benefit of DCD and Raymond James ........ 6
ARGUMENT ........ 6
I. PLAINTIFF LACKS STANDING TO ENFORCE THE TERMS OF A CONTRACT IT IS NOT A PARTY TO AND DOES NOT INURE TO ITS BENEFIT ........ 7
II. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE DTSA ........ 9
A. Plaintiff Fails to Allege It Is the Owner of a Trade Secret ........ 9
B. Plaintiff Fails to Identify a Valid Trade Secret ........ 9
1. Plaintiff Fails to Allege That It Took Reasonable Measures to Protect Its Trade Secrets ........ 10
2. Plaintiff's Purported Trade Secrets Have Been Widely Disseminated to the Public ........ 11
3. Plaintiff Fails to Identity Its Purported Trade Secrets with Sufficient Particularity ........ 12
C. Plaintiff Fails to Allege Defendants Misappropriated Any Trade Secrets ........ 13
III. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE MUTSA ........ 16
IV. PLAINTIFF FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE ........ 17
A. Tortious Interference with Employment Contract ........ 17
B. Tortious Interference with the Sparkle Pop APA and TSA ........ 19
CONCLUSION ........ 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AirFacts, Inc. v. de Amezaga*,
909 F.3d 84 (4th Cir. 2018) ....................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6, 7

*Bell v. Clarke*,
No. TDC-15-1621, 2016 WL 1045959 (D. Md. Mar. 16, 2016)....................8

*Bindagraphics, Inc. v. Fox Grp., Inc.*,
377 F. Supp. 3d 565 (D. Md. 2019)....................3, 19, 20

*Brightview Grp., LP v. Teeters*,
441 F. Supp. 3d 115 (D. Md. 2020)....................11

*ClearOne Advantage, LLC v. Kersen*,
756 F. Supp. 3d 30 (D. Md. 2024)....................10

*Cooper v. Bozutto & Assocs., Inc.*,
No. DLB-19-3141, 2020 WL 2085462 (D. Md. Apr. 30, 2020) ....................7

*CSS, Inc. v. Herrington*,
No. 16-CV-01762, 2017 WL 3381444 (S.D.W. Va. Aug. 4, 2017)....................11, 12

*Design Gaps, Inc. v. Hall*,
No. 3:23-CV-186-MOC, 2023 WL 8103156 (W.D.N.C. Nov. 21, 2023)....................13

*Diamond v. T. Rowe Price Assocs., Inc.*,
852 F. Supp. 372 (D. Md. 1994)....................14

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
637 F.3d 435 (4th Cir. 2011) ....................5

*EndoSurg Med., Inc. v. EndoMaster Med., Inc.*,
71 F. Supp. 3d 525 (D. Md. 2014)....................17

*Eng. v. Ryland Mortg. Co.*,
No. GJH-16-3675, 2017 WL 3475674 (D. Md. Aug. 11, 2017) ....................8

*Food & Drug Admin. v. All. for Hippocratic Med.*,
602 U.S. 367 (2024)....................7

*Fyfe Co., LLC v. Structural Grp., Inc.*,
No. CV CCB-13-176, 2016 WL 4662333 (D. Md. Sept. 7, 2016) .... 2, 12

*Harry & Jeanette Weinberg Found., Inc. v. St. Marks Ave., LLC*,
No. GLR-15-3525, 2018 WL 704866 (D. Md. Feb. 5, 2018) .... 18, 19-20

*In re Hum. Genome Scis. Inc. Sec. Litig.*,
933 F. Supp. 2d 751 (D. Md. 2013) .... 7

*King v. Marriott Int'l, Inc.*,
520 F. Supp. 2d 748 (D.S.C. 2007) .... 17-18

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .... 7

*Mallet & Co. Inc. v. Lacayo*,
16 F.4th 364 (3d Cir. 2021) .... 12

*In re Merry-Go-Round Enters., Inc.*,
218 B.R. 361 (Bankr. D. Md. 1998) .... 8

*Perez v. Blue Collar Scholars, LLC*,
No. MJM-23-2198, 2025 WL 449053 (D. Md. Feb. 10, 2025) .... 10, 13

*Philips N. Am. LLC v. Hayes*,
No. ELH-20-1409, 2020 WL 5407796 (D. Md. Sept. 9, 2020) .... 10-11

*S-E-A, Ltd. v. Cornetto*,
No. JKB-18-1761, 2018 WL 3996270 (D. Md. Aug. 21, 2018) .... 10, 12-14

*Savaria USA, Inc. v. Elevator Works, LLC*,
No. RDB-24-1311, 2024 WL 2212914 (D. Md. May 16, 2024) .... 13, 16

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .... 7

*Stroh Brewery Co. v. Allegany Beer Dist.*,
989 F. Supp. 740 (D. Md. 1996) .... 8

*Sys. 4, Inc. v. Landis & Gyr, Inc.*,
8 F. App'x 196 (4th Cir. 2001) .... 13, 14

*Tech USA, Inc. v. Milligan*,
No. RDB-20-0310, 2021 WL 795151 (D. Md. Mar. 1, 2021) .... 9, 14-16

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) .... 5

*TK Elevator Corp. v. Drzewiecki*,
No. RDB-25-0744, 2025 WL 776111 (D. Md. Mar. 11, 2025)....9, 16

*Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*,
705 F. Supp. 3d 510 (D. Md. 2023)....18, 20

*Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*,
358 F. Supp. 2d 475 (D. Md. 2005)....17, 19

**Statutes**

18 U.S.C. §1839 (3)....9, 12

18 U.S.C. §1839 (4)....9

18 U.S.C. §1839 (5)....13

18 U.S.C. §1839 (6)....13

Defendants, Alliance Entertainment Holding Corporation and Alliance Entertainment, LLC (collectively, "Defendants" or "AENT"), submit this Memorandum of Law in Support of Their Motion to Dismiss the Complaint ("Motion to Dismiss").

**PRELIMINARY STATEMENT**

Plaintiff Sparkle Pop LLC ("Plaintiff" or "Sparkle Pop") filed the instant Complaint alleging violations of the Defend Trade Secrets Act ("DTSA") and Maryland Uniform Trade Secrets Act ("MUTSA") and asserting claims for tortious interference, arising from AENT's purported violation of a non-disclosure/non-solicitation agreement ("NDA") to which Plaintiff is not a party, an intended third-party beneficiary, or an assignee of a party's rights. Plaintiff therefore lacks standing to asserts claims under the NDA, and the Complaint should be dismissed in its entirety, *with prejudice*.

Even if the Court were to consider the individual claims, the conclusory nature of the allegations, devoid of any reference to pertinent facts, also require dismissal of the Complaint. To sustain a claim under the DTSA and MUTSA, Plaintiff must allege that it owns a trade secret, which was subject to reasonable measures of secrecy, and the trade secret was misappropriated by improper means. First, Plaintiff fails to plead that it is an "owner" of the trade secret by alleging facts to show how Sparkle Pop obtained title or license to any purported trade secrets. At best, the allegations in the Complaint show that Diamond Comic Distributors, Inc ("DCD"), a separate entity, is the owner of alleged trade secrets.

Plaintiff also fails to identify any trade secrets, including what measures it took to protect those trade secrets. There are no allegations, for example, that Plaintiff required employees to sign a confidentiality agreement, stored information on encrypted servers protected by firewalls, limited dissemination of protected information to select employees, or provided access to certain databases only through assigned identifications and passwords. In fact, DCD and its affiliates (collectively,

the "Debtors") publicly disclosed their customer lists and vendor lists in their chapter 11 cases, which was then further disseminated in the media, precluding a finding that such information constitute trade secrets.

Additionally, Plaintiff fails to identify with sufficient particularity the trade secrets Defendants are supposed to have misappropriated. Instead, the Complaint lists vague categories of trade secrets former DCD employees "had access" to, such as "customer lists" and "vendor lists" without any additional details to allow Defendants to ascertain what trade secrets they allegedly misappropriated. This is insufficient to state a claim under the DTSA or MUTSA. "It is axiomatic—and essential—that a plaintiff asserting a misappropriation of trade secrets claim identify their purported trade secrets with sufficient detail and precision." *Fyfe Co., LLC v. Structural Grp., Inc.*, No. CV CCB-13-176, 2016 WL 4662333, at *8 (D. Md. Sept. 7, 2016).[1]

Moreover, Plaintiff fails to allege that Defendants acquired any trade secrets by improper means, as required to establish that Defendants misappropriated trade secrets. There are no allegations that former employees sent trade secrets to their personal email accounts, downloaded such information to external or cloud-based storage locations, printed and retained documents containing such information, or even how the former employees would or could disclose DCD's trade secrets in such a way that violates enforceable confidentiality obligations. Plaintiff's claims under the DTSA and MUTSA should be dismissed.

Plaintiff's claims for tortious interference of an employment contract also fails. Its rests on DCD's employee manual as a "valid employment contract" between DCD and its former employees. But the manual itself states that "[t]his handbook is ***not an employment contract*** and

[1] Unless otherwise stated, all citations are omitted and emphasis added.

it does not guarantee your employment will continue for any specified period of time or end only under certain conditions." ECF No. 36-2, at 6. Plaintiff also fails to allege that it has any rights to enforce DCD's employee manual, what those rights are, or even how Plaintiff acquired such rights. Additionally, beyond a conclusory statement, Plaintiff fails to allege that AENT was aware of the existence of an enforceable contract. Nor did it allege who was subject to an employment contract, if anyone, what those terms were, or how AENT became aware of the alleged agreements.

Similarly, as to its claim for tortious interference with the Sparkle Pop APA (defined below) and the transition services agreement ("TSA"), Plaintiff fails to allege how Defendants could have been aware of the TSA, where prior to the filing of the Complaint, the TSA was filed under seal and not shared with Defendants. Additionally, Plaintiff does not identify what provisions of the Sparkle Pop APA AENT's alleged interference caused DCD to breach. Finally, Plaintiff's failure to allege damages beyond a conclusory statement that it suffered damages "in an amount to be proven at trial" also requires dismissal of its tortious interference claims. *See Bindagraphics, Inc. v. Fox Grp., Inc.,* 377 F. Supp. 3d 565, 576 (D. Md. 2019) ("While an enforceable contract between Mr. Rodgers and Bindagraphics is necessary for the tort claim to survive, it is not sufficient; Bindagraphics must provide a detailed account of the damages it incurred.").

Accordingly, Plaintiff's Complaint should be dismissed in its entirety, *with prejudice*.

## STATEMENT OF FACTS

### I. Background

DCD is a distributor of comic books, graphic novels, and related merchandise. Complaint ("Compl."), ¶12. On January 14, 2024, DCD and its affiliates (collectively, the "Debtors") filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code. *Id.* ¶21. At an auction held on March 24-25, 2025 (the "Auction"), the Debtors selected AENT as the

successful bidder and a joint bid submitted by Universal Distributors, Inc. and Ad Populum LLC ("Universal/Ad Populum") as the back-up bidder. *Id.* ¶25. After the Auction, it came to light that the Debtors were soliciting new bids and secretly negotiating with Universal/Ad Populum. The Debtors attempted to steer the sale to Universal/Ad Populum and announced that it would seek approval of the sale of the Debtors' assets to them. AENT promptly filed an adversary proceeding and a motion for preliminary injunction to stop the sale to Universal/Ad Populum and objected to the Debtors' efforts to sell their assets to Universal/Ad Populum. *Id.* ¶27. That challenge was resolved by consent after an evidentiary hearing and AENT was declared the successful bidder. *Id.* ¶28.

AENT terminated the sale transaction prior to closing after discovering that the Debtors had fraudulently misrepresented the status of their relationship with Wizards of the West Coast LLC, the Debtors' largest vendor accounting for approximately 25% of the Debtors' Alliance Gaming Business revenue. AENT also filed a lawsuit, which is currently pending before this Court, against the Debtors and other parties concerning their fraudulent conduct. *See* Ad. Proc. No. 25-00112, at ECF No. 1.

## II. Sparkle Pop Purchases the Debtors' Assets

Upon AENT terminating the sale transaction, the Debtors sought and received the Court's permission to sell their assets to Universal/Ad Populum. Sparkle Pop, a wholly owned subsidiary of Ad Populum, agreed to purchase Debtors' DCD, Diamond Select Toys and Collectibles ("DST"), and Collectible Grading Authority businesses. *Id.* ¶¶31, 32. On April 27, 2025, Debtors and Sparkle Pop executed an asset purchase agreement ("Sparkle Pop APA"). *Id.* ¶32. On May 1, 2025, the Court entered an order approving the sale of the Debtors' assets to Universal/Ad Populum.

On May 15, 2025, Sparke Pop and DCD executed the TSA. *Id.* ¶33. It was not publicly filed in the main bankruptcy proceeding. *See In re Diamond Comic Distributors, Inc., et al.*, No. 25-10308 (DER), Docket. The TSA, incorporated by reference into the Complaint, provides that DCD "shall provide to [Sparkle Pop] . . . the services of Seller's employees and independent contractors listed in Exhibit" defined as "Designated Employees." *See* ECF No. 35-2, Section 1.1(i)(A).[2] However, Exhibit A to the TSA did not contain a list of any Designated Employees. *See id.* Exhibit A.

## III. <u>DCD Employees Look for Alternative Employment</u>

Prior to and upon Plaintiff's execution of the Sparkle Pop APA, the uncertainty over the Debtors' chapter 11 filing and Sparkle Pop's ability to continue operating in the marketplace caused many employees to seek alternative employment. For example, as shown in certain employees' exit interviews, incorporated by reference into the Complaint:

- Lee Butman, Merchandise Team Manager: "[S]ent out his resume a few months" before his termination "to get feelers for potential new employers" as he needed stability to support his family. ECF 36-3, at 2.

- Matt Demory, Assistant Manager – Print Team: Employee stated that he "had to do what was best for him and his family" since "Diamond lost too many employees and the core competency" and that "too many businesses have made it clear they do not want to continue business with Diamond" and are "moving to competitors." *Id.* at 4.

- Joe Lunday, Director of Ecommerce Sales: Employee stated that "moral was low across the organization" and that Ad Populum "eliminated the necessary roles to keep any attempt at success very limited." *Id.* at 6.

---

[2] When ruling on a 12(b)(6) motion to dismiss, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *see also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint.").

- Trista Peterson, Sales Manager: Employee stated that AENT "did not poach her" and that she "applied to [AENT] months ago to see if there were any Buyer positions." *Id.* at 9.

- Sadie Campos, Business Development Manager: Employee stated that she was "frustrated that nothing was shared about DST being shut down after the sale and with no plan in place for 'what's next.'" *Id.* at 13.

- Ryan Shelkett, Executive Director of Applications Development: Employee stated that he "had been looking for a new job since the bankruptcy announcement was made in January 2025. He researched opportunities in a variety of industries." *Id.* at 14.

## IV. AENT Executes a Non-Disclosure/Non-Solicitation Agreement Solely for the Benefit of DCD and Raymond James

Prior to the Auction, AENT entered into the NDA with Raymond James & Associates, Inc. ("Raymond James"), on behalf of itself and DCD. ECF No. 37. The NDA was entered into because AENT "requested certain information (oral, written, electronic or otherwise) relating to or concerning the Company, its subsidiaries and/or affiliates." *Id.* at 5. The NDA recognized that AENT signed the agreement "for the benefit of [DCD] and Raymond James and their respective successors and assigns." *Id.* at 9.

The Complaint does not allege that the Debtors assigned any rights under the NDA to Sparkle Pop as part of the sale transaction. *See generally* Compl. In fact, the Sparkle Pop APA expressly states that no contracts are being assigned to Sparkle Pop. *See* ECF No. 35-1, Schedule 2.1 (stating there are no "assigned contracts").

On June 2, 2025, counsel for the Debtors sent a cease-and-desist letter to AENT asserting that AENT violated the NDA by hiring certain former employees of DCD. *See* ECF No. 5-4. This letter was sent on behalf of the Debtors only. *Id.*

## ARGUMENT

A complaint must be dismissed if it does not allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). To withstand a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *In re Hum. Genome Scis. Inc. Sec. Litig.*, 933 F. Supp. 2d 751, 757 (D. Md. 2013). This requires "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. The Court need not accept as true "a legal conclusion couched as a factual allegation." *Cooper v. Bozutto & Assocs., Inc.*, No. DLB-19-3141, 2020 WL 2085462, at *3 (D. Md. Apr. 30, 2020).

## I. PLAINTIFF LACKS STANDING TO ENFORCE THE TERMS OF A CONTRACT IT IS NOT A PARTY TO AND DOES NOT INURE TO ITS BENEFIT

A plaintiff's Article III standing is a fundamental requirement that defines and limits a court's power to resolve cases or controversies. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024). To establish its standing, Plaintiff must at a "constitutional minimum" (1) have suffered an "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court;" and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016).

Here, Plaintiff cannot allege that it has suffered an injury fairly traceable to AENT. The allegations in the Complaint center around AENT's alleged breach of the NDA, which purportedly

resulted in its exploitation of some unidentified, unspecified trade secrets. *See* Compl. ¶¶1, 3, 14-20. However, AENT entered into the NDA with and for the benefit of Raymond James and DCD. *Id.* ¶14. Nor is Plaintiff an intended third-party beneficiary of that NDA. It is axiomatic that under Maryland law "a person cannot sue under a contract when that person is neither a party to nor a third-party beneficiary of the contract." *Bell v. Clarke*, No. TDC-15-1621, 2016 WL 1045959, at *2 (D. Md. Mar. 16, 2016); *see also In re Merry-Go-Round Enters., Inc.*, 218 B.R. 361, 365, 367 (Bankr. D. Md. 1998) (dismissing claim where plaintiff "does not have standing to enforce the Agreement as a third party beneficiary" and was "was not a party to the contract."); *Stroh Brewery Co. v. Allegany Beer Dist.*, 989 F. Supp. 740, 743 (D. Md. 1996) ("A contract cannot be enforced by a non-party unless that person is an intended third-party beneficiary.").

Moreover, even though Plaintiff purchased certain of Debtors' assets, the Complaint does not allege that DCD or Raymond James assigned their rights under the NDA to Sparkle Pop. Indeed, Schedule 2.1(c) of the Sparkle Pop APA, incorporated by reference into the Complaint, expressly states that no contracts are being assigned to Sparkle Pop. *See* ECF No. 35-1, at 47. Because Plaintiff was not assigned any rights to the NDA, it lacks standing to commence this action. *See Eng. v. Ryland Mortg. Co.*, No. GJH-16-3675, 2017 WL 3475674, at *4 (D. Md. Aug. 11, 2017) ("Plaintiff has made no allegations that he was a party to the original PSA or to any of the assignments of the Deed of Trust. Plaintiff therefore has no standing to challenge the validity of the PSA or assignments.").

Accordingly, Plaintiff lacks standing to enforce the NDA to which it was not a party, not an intended third-party beneficiary, or an assignee of any parties' rights under the NDA. For this reason alone, the Complaint should be dismissed in its entirety, *with prejudice*. *Id.*; *Bell*, 2016 WL 1045959, at *2; *In re Merry-Go-Round Enters., Inc.*, 218 B.R. at 365; *Stroh Brewery Co.*, 989 F. Supp. at 743.

## II. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE DTSA

To sustain a claim under the DTSA, Plaintiff must allege: (1) it owns a trade secret which was subject to reasonable measures of secrecy; (2) the trade secret was misappropriated by improper means; and (3) the trade secret implicates interstate or foreign commerce. *See Tech USA, Inc. v. Milligan*, No. RDB-20-0310, 2021 WL 795151, at *4 (D. Md. Mar. 1, 2021); *TK Elevator Corp. v. Drzewiecki*, No. RDB-25-0744, 2025 WL 776111, at *4 (D. Md. Mar. 11, 2025).

### A. Plaintiff Fails to Allege It Is the Owner of a Trade Secret

Beyond a conclusory statement that "Sparkle Pop is the owner of trade secrets that are related to products and services and intended for use in interstate commerce" (Compl. ¶¶55, 61), Plaintiff has not alleged any facts to establish that it is the owner of any trade secrets. An "owner" with respect to a trade secret is "the person or entity in whom or in which rightful legal or equitable title to, or license in, the trade secret is reposed." 18 U.S.C. §1839 (4). The Complaint does not allege if or how Sparkle Pop obtained title or license to any purported trade secrets. At best, the allegations in the Complaint show that DCD, a separate entity, is the owner of alleged trade secrets. *See e.g.*, Compl. ¶¶14-18 (stating that AENT signed the NDA with Debtors and Raymond James to receive access to "Evaluation Material"). Plaintiff's failure to plead facts to establish its ownership of any trade secrets requires dismissal of its claim under the DTSA.

### B. Plaintiff Fails to Identify a Valid Trade Secret

A trade secret is defined as "all forms and types of financial, business, scientific, technical, economic, or engineering information" if (1) the owner has taken reasonable measures to keep such information secret and (2) the information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means. 18 U.S.C. §1839 (3)(B); *see also TK Elevator Corp.*, 2025 WL 776111, at *4.

### *1. Plaintiff Fails to Allege That It Took Reasonable Measures to Protect Its Trade Secrets*

Plaintiff has not alleged that it took reasonable measures to protect its trade secrets beyond a conclusory allegation that it was operating "according to established information security policies.". *See* Compl. ¶¶57, 64. Where a party fails to allege facts sufficient to show that it took reasonable measure to protect its information, a court will not accord such information the status of trade secrets. *See Perez v. Blue Collar Scholars, LLC*, No. MJM-23-2198, 2025 WL 449053, at *4 (D. Md. Feb. 10, 2025) (denying motion to amend as futile where "BCS fails to identify or describe what reasonable measures it took to keep the information secret."); *S-E-A, Ltd. v. Cornetto*, No. JKB-18-1761, 2018 WL 3996270, at *2 (D. Md. Aug. 21, 2018) ("S-E-A's allegation that the information in the contact list included 'historical usage of S-E-A's service, and clients purchasing needs and preferences' is vague; this allegation does not include sufficient factual content for the Court to draw the inference of such information being accorded the status of a trade secret.") (modification omitted).

Here, Plaintiff has not identified any measures it took to protect its purported trade secrets. There are no allegations, for example, that Plaintiff required employees to sign a confidentiality agreement, stored information on encrypted servers protected by firewalls, limited dissemination of protected information to select employees, or provided access to certain database only through assigned identifications and passwords. *Cf. ClearOne Advantage, LLC v. Kersen*, 756 F. Supp. 3d 30, 42 (D. Md. 2024) (finding plaintiff took reasonable measures to keep information secret "by limiting access to the database only to employees using their assigned ID and password."); *Philips N. Am. LLC v. Hayes*, No. ELH-20-1409, 2020 WL 5407796, at *3 (D. Md. Sept. 9, 2020) (finding plaintiff took reasonable measure to preserve secrecy of trade secrets where it required employees to "sign agreements to protect its trade secrets," "limits dissemination" of trade secrets within the

company, and "spends considerable resources on internal information technology security programs, features and systems to safeguard against employees improperly accessing, exporting and retaining its trade secrets."); *Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 129-30 (D. Md. 2020) (finding measures reasonable to protect trade secrets where protected information was not "disseminated outside of Brightview, and only 125 of Brightview's 4,300 employees have access" to such information). Plaintiff's failure to plead that it took reasonable measures to protect its trade secrets requires dismissal of its claim under the DTSA.

### ***2. Plaintiff's Purported Trade Secrets Have Been Widely Disseminated to the Public***

It is black letter law that "[t]he subject of a trade secret must be secret, and must not be of public knowledge or of a general knowledge in the trade or business." *Kewanee Oil Co. v.* Bicron *Corp.*, 416 U.S. 470, 475 (1974); *see also CSS, Inc. v. Herrington*, No. 16-CV-01762, 2017 WL 3381444, at *16 (S.D.W. Va. Aug. 4, 2017) ("CSS's client list cannot be considered a trade secret because the names of CSS's clients are public[]ly available information.").

Here, the Debtors publicly disclosed their customer lists and vendor lists, which was then further disseminated in the media. *See In re Diamond Comic Distributors, Inc., et al.*, No. 25-10308 (DER), at ECF Nos. 419 (affidavit of service containing hundreds of pages of customer and vendor identities); 436-7 (Monthly Operating Report for Period Ended 02/28/2025); 439-7 (Monthly Operating Report for Period Ended 03/31/2025); 444-7 (Monthly Operating Report for Period Ended 01/31/2025); 495 (Monthly Operating Report for Period Ended 04/30/2025). In fact, as the industry website *Bleeding Cool* described "[i]t has been said that one of Diamond Comic Distributors' most valuable assets is its data, its list of vendors, both across the USA and the world.

Well, courtesy of the US bankruptcy filing system, these are now all open source."[3] The public dissemination of this information forecloses a finding that its customer lists or vendor lists are trade secrets. *See* 18 U.S.C. §1839 (3)(A) (trade secret owner must have "taken reasonable measures to keep such information secret"); *see also Kewanee Oil Co.*, 416 U.S. at 475; *CSS, Inc.*, 2017 WL 3381444, at *16.

***3. Plaintiff Fails to Identity Its Purported Trade Secrets with Sufficient Particularity***

Plaintiff fails to identify, with sufficient particularity, the trade secrets Defendants are supposed to have misappropriated. Instead, the Complaint lists vague categories of trade secrets former DCD employees had access to, such as "customer lists" and "vendors lists" without any additional details to allow Defendants to ascertain what trade secrets they allegedly misappropriated. *See* Compl. ¶¶41 42, 55, 62. That is insufficient as a matter of law. "It is axiomatic—and essential—that a plaintiff asserting a misappropriation of trade secrets claim identify their purported trade secrets with sufficient detail and precision." *Fyfe Co., LLC*, 2016 WL 4662333, at *8; *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 382 (3d Cir. 2021) ("At a minimum, 'the subject matter of the trade secret must be described 'with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.'"); *S-E-A, Ltd.*, 2018 WL 3996270, at *3 ("In addition to claiming its Outlook client contact list is a trade secret, S-E-A alleges it possesses a trade secret in 'its proprietary ... graphics and animation technology and training.' This allegation is merely a conclusion that does not

---

[3] *See* Rich Johnston, *Diamond Comics Releases Addresses For Every Single Comic Book Store*, updated May 10, 2025, available at https://bleedingcool.com/comics/diamond-comics-releases-addresses-for-every-single-comic-book-store/.

survive a Rule 12(b)(6) motion."); *Design Gaps, Inc. v. Hall*, No. 3:23-CV-186-MOC, 2023 WL 8103156, at *8 (W.D.N.C. Nov. 21, 2023) ("To adequately plead trade secret misappropriation under the DTSA, a plaintiff must identify a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating."). Plaintiff's failure to identify the trade secrets in sufficient detail is fatal to its claim under the DTSA.

**C. <u>Plaintiff Fails to Allege Defendants Misappropriated Any Trade Secrets</u>**

Plaintiff fails to allege that Defendants acquired any trade secrets by improper means, as required to establish the element of misappropriation. A person misappropriates trade secrets when they (1) acquire a trade secret that they know or have reason to know was acquired by improper means or (2) use or disclose the trade secret after acquiring it through improper means. *See* 18 U.S.C. §1839 (5); *Perez*, 2025 WL 449053, at *3; *Savaria USA, Inc. v. Elevator Works, LLC*, No. RDB-24-1311, 2024 WL 2212914, at *8 (D. Md. May 16, 2024). The DTSA defines "improper means" to include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means" but does not include "reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. §1839 (6). As the Fourth Circuit opined when considering the identical definition under the MUTSA "[a]ll of the examples listed [] constitute intentional conduct involving some sort of stealth, deception or trickery." *Sys. 4, Inc. v. Landis & Gyr, Inc.*, 8 F. App'x 196, 200 (4th Cir. 2001).

Here, apart from a wholly conclusory statement that AENT "willfully and maliciously misappropriated the Trade Secrets" (Compl. ¶¶59, 66), the Complaint fails to allege that AENT or any former DCD employees engaged in any deceptive acts or trickery to obtain access to trade secrets—there are no allegations or evidence that former employees sent trade secrets to their personal email accounts, downloaded such information to external or cloud-based storage locations, printed and retained documents containing such information, or even how the former

employees would or could disclose DCD's trade secrets in such a way that violates enforceable confidentiality obligations.

Instead, Plaintiff merely alleges that AENT "obtained access to trade secrets" or that former DCD employees "had access" to trade secret, but not that Plaintiff misappropriated those trade secrets. However, "the mere ability to access a trade secret is not sufficient to constitute misappropriation under the DTSA." *Tech USA, Inc.*, 2021 WL 795151, at *5; *see also Diamond v. T. Rowe Price Assocs., Inc.*, 852 F. Supp. 372, 412 (D. Md. 1994) ("Even if the documents were trade secrets, there was no actionable 'misappropriation' in this case. In order to qualify as misappropriation under MUTSA, one must either acquire the trade secret by improper means or disclose the trade secret without express or implied consent. [] T. Rowe Price has proffered no evidence that Diamond improperly acquired the files or disclosed their contents to others. Thus, the MUTSA count fails as a matter of law.")

Indeed, far from alleging that Defendants obtained access to trade secrets by improper means, Plaintiff alleges that DCD *granted* AENT access to certain unspecified information after AENT signed an NDA. Compl. ¶¶14, 15. Because Plaintiff did not allege that Defendants acquired access to trade secrets through deceptive means or trickery, its claim under the DTSA fails. *See Sys. 4, Inc.*, 8 F. App'x at 200 (finding that defendant did not acquire the trade secret by improper means where "[plaintiff] Systems 4 points to no evidence that [defendant] Wallick intentionally acquired Systems 4's proposal, using deception, trickery or any other dishonest means.").

Even if Defendants solicited employees in violation of the NDA (it did not), solicitation of former employees is insufficient to state a claim for misappropriation. *See e.g.*, *S-E-A, Ltd.*, 2018 WL 3996270, at *2 ("S-E-A does not plausibly allege that Cornetto has misappropriated its 3D scanning process, even if it did rise to the level of being a trade secret. Mere solicitation of clients

and providing consulting services for them, although perhaps a violation of nonsolicitation and noncompetition covenants, do not allow an inference that Cornetto misappropriated a trade secret."). Plaintiff fails to allege that Defendants misappropriated any trade secrets.

The allegations in Plaintiff's Complaint are analogous to those that the Court found insufficient in *Tech USA, Inc.* In that case, Tech USA hired Milligan who executed a confidentiality/non-competition agreement, which prohibited Milligan from competing with Tech USA within a defined geographical scope, from soliciting Tech USA's employees, customers, or clients for a limited period of time after Milligan left the company, or from divulging any confidential information to a third party. *Tech USA, Inc.*, 2021 WL 795151, at *1-2. After working at the company for 15 years, Milligan resigned and went to work for Zachary Piper. Tech USA alleged that prior to her departure, Milligan spoke with a representative at Zachary Piper and during such meeting disclosed "identity of certain Tech USA Customers as well as other information regarding those customers." *Id.* Tech USA filed a lawsuit, alleging, among other things, violation of the DTSA. In granting a motion to dismiss plaintiff's claim under the DTSA, the District Court found that Tech USA's conclusory allegations were insufficient to state a claim under the DTSA. *Id.* at *4. Specifically, the court determined, *inter alia*, that (1) Tech USA's failure to disclose the circumstances of Milligan's contact with Zachary Piper, as well as "the exact nature of the information she allegedly shared" doomed its misappropriation claim (*id.*); (2) Tech USA's failure to allege "which customer identities were supposedly disclosed, nor that those particular identities were unavailable to the public" or that it "took measures to maintain the confidentiality of its customers' identities or their contact" was fatal to its claim under the DTSA (*id.*); and (3) Tech USA's lack of "any allegations regarding the specific information Milligan allegedly disclosed to the ZP Defendants—not just allegations of what information Milligan allegedly *possessed* at the time of the disclosure" required dismissal of its misappropriation claim. *Id.* at *5.

Here, Plaintiff alleged far less than the District Court found insufficient in Tech USA—Plaintiff fails to allege that it (or DCD) took reasonable steps to protect its trade secrets, other than operating "according to established information security policies" without specifying what those security policies are, or that its policies were violated. Compl. ¶57, 64. In fact much of the categories of information that Plaintiff identifies as trade secrets such as customer lists and vendor lists have been widely disseminated to the public. *See* 25-10308, ECF Nos. 419, 436-7, 439-7, 444-7, and 495. Plaintiff also does not identify, with sufficient particularity, the trade secrets AENT is alleged to have misappropriated. Instead, Plaintiff only alleges that that former DCD employees "had access" to certain unidentified trade secrets, without identifying what specific information was disclosed, to whom the information was disclosed, and by whom. *Id.* ¶¶41 42, 43, 55, 62. Similarly, Plaintiff does not allege that Defendants accessed any information through improper means, such as bribery, theft, espionage, or other similar means. *See generally* Compl. To the contrary, Plaintiff alleges that DCD *granted* AENT access to certain unspecified information after AENT signed an NDA. *Id.* ¶¶14, 15. Plaintiff fails to state a claim under the DTSA.

## III. <u>PLAINTIFF FAILS TO STATE A CLAIM UNDER THE MUTSA</u>

"The standards for misappropriation of trade secrets under MUTSA and DTSA are nearly identical." *TK Elevator Corp.*, 2025 WL 776111, at *4. As under the DTSA, to establish a claim under the MUTSA, Plaintiff must allege that it possessed a valid trade secret, (2) that Defendants acquired its trade secret, and (3) that Defendants knew or should have known that the trade secret was acquired by improper means. *See AirFacts, Inc. v. de Amezaga*, 909 F.3d 84, 95 (4th Cir. 2018). Both statutes define a trade secret in "substantially the same manner." *Savaria USA, Inc.*, 2024 WL 2212914, at *8.

For all the reasons stated *supra*, Part II, Plaintiff's claims under the MUTSA fail: Plaintiff fails to allege that it owned the trade secrets (Part II.A); Plaintiff fails to plead that it took

reasonable measures to protected the trade secrets (Part II.B.1); Plaintiff's alleged trade secrets have been widely disseminated to the public (Part II.B.2); Plaintiff fails to identify the trade secrets with sufficient particularity to put Defendants on notice of the trade secrets it allegedly misappropriated (Part II.B.3); Plaintiff fails to allege that Defendants acquired any trade secrets by improper means (*i.e.*, no allegations of misappropriation) (Part II.C).

## IV. PLAINTIFF FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE

Plaintiff fails to state a claim for tortious interference. "To prove tortious interference with a contract, a plaintiff must show (1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F. Supp. 3d 525, 542 (D. Md. 2014); *see also Ultrasound Imaging Corp. v. Am. Soc'y of Breast Surgeons*, 358 F. Supp. 2d 475, 479 (D. Md. 2005).

### A. Tortious Interference with Employment Contract

Plaintiff's claim for tortious interference with an employment contract fails to even plead the threshold element, the existence of a contract, other than asserting that the former employees were, in fact, employees. Its claim rests on DCD's employee manual and its enforceability as a "valid employment contract" between DCD and its former employees. *See* Compl. ¶68. However, the manual, incorporated by reference into the Complaint, specifically states that "***[t]his handbook is not an employment contract and it does not guarantee your employment will continue for any specified period of time or end only under certain conditions***." ECF No. 36-2, at 6. This precludes a finding that any employment agreement existed based on the employee manual. *See King v. Marriott Int'l, Inc.*, 520 F. Supp. 2d 748, 754 (D.S.C. 2007), aff'd, 267 F. App'x 301 (4th Cir. 2008) (stating that "under Maryland law the handbook did not create an enforceable

employment contract" where the handbook stated that nothing contained therein will change the "at will" status of the employees or "create a contract of employment for any specific period of time."); *Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*, 705 F. Supp. 3d 510, 519 (D. Md. 2023) ("Total Recon has failed to state a claim for tortious interference with contractual relations for a different reason: The company has not pled the first element—the existence of any contract between Total Recon and a customer—with sufficient specificity.").

Additionally, Plaintiff only alleges, again in wholly conclusory fashion, that AENT was aware of the existence of employment contracts and an employee manual, but does not identify those contracts, who was subject to an employment contract, if anyone, what those terms were, or how AENT became aware of the alleged agreements. This conclusory allegation is insufficient to state a claim for tortious interference with an employment contract. *See Harry & Jeanette Weinberg Found., Inc. v. St. Marks Ave., LLC*, No. GLR-15-3525, 2018 WL 704866, at *3 (D. Md. Feb. 5, 2018) ("Smith's allegations are severely deficient. She simply describes 'acts to damage Ms. Smith's reputation and contractual and business relationships with the intent of causing economic harm. This bare allegation lacks the second and fourth elements entirely. And it only states the first and third elements in a conclusory manner, 'devoid of any reference to actual events.").

Similarly, Plaintiff fails to allege that Defendants caused the employees to breach an employment agreement. That certain employees resigned and joined a competitor, after Debtors filed for chapter 11, does not establish that Defendants induced those employees to breach their employment agreement, particularly where there are no allegations that the employees at issue were subject to a written employment agreement or restrictive covenant. *See generally* Compl. Further, having failed to plead the existence of a written employment agreement or restrictive

covenant, Plaintiff cannot allege that the former employees breached a non-existent agreement. *Id.* Plaintiff fails to plead a claim for tortious interference with an employment contract.

Further, Plaintiff's failure to allege damages beyond a conclusory statement that it suffered damages "in an amount to be proven at trial" (Compl. ¶71) also requires dismissal of its tortious interference claim. *See Bindagraphics, Inc.*, 377 F. Supp. 3d at 576 ("While an enforceable contract between Mr. Rodgers and Bindagraphics is necessary for the tort claim to survive, it is not sufficient; Bindagraphics must provide a detailed account of the damages it incurred.").

**B. <u>Tortious Interference with the Sparkle Pop APA and TSA</u>**

As with its claim for tortious interference with an employment contract, Plaintiff fails to allege facts to establish that AENT knew of the TSA. Plaintiff only alleges that AENT, through counsel "received service of the Sale Order" but fails to allege that Defendants received *unsealed* copies of the TSA. *See* Compl. ¶72. To the contrary, prior to Plaintiff's filing of the instant action, there were no publicly available copies of the TSA, such that Defendants could be aware of its terms. Plaintiff cannot plead tortious interference with the TSA where Defendants were not aware of its terms. *See Ultrasound Imaging Corp.*, 358 F. Supp. 2d at 481 ("Ultrasound also contends that the incident involving the Grand Hyatt rose to the level of a tortious interference with contract. This contention also fails because there is no indication in the record that the Defendants had any knowledge of the reservation contract between the Hyatt and Ultrasound.").

Similarly, while Plaintiff conclusory alleges that AENT caused DCD to "breach[] the APA, by among other things, failing to deliver the assets in the form and in the value promised," (Compl. ¶76), it fails to identify what provisions of the Sparkle Pop APA AENT's alleged interference caused DCD to breach, what DCD was supposed to have delivered, and what DCD actually delivered. These omissions are fatal to its tortious interference claim. *See Harry & Jeanette*

*Weinberg Found., Inc.*, 2018 WL 704866, at *3; *Total Recon Auto Ctr., LLC*, 705 F. Supp. 3d at 519-20.

Additionally, while Plaintiff claims that AENT "illegally poached" DCD's former employees in violation of the APA and TSA (Compl. ¶73), its own exit interviews, incorporated by reference into the Complaint, underscore that the employees at issue were disenchanted with Sparkle Pop and/or were searching for new jobs *months before* they ultimately resigned their employment at DCD or Sparkle Pop. *See* ECF No. 36-3, at 2, 4, 6, 9, 13, 14. Relatedly, Plaintiff does not plead that any of the former DCD employees are critical to their operations. In fact, Plaintiff does not identify any "Designated Employees" who were expected to provide services to Sparkle Pop during the transition period. *See generally* Compl.

Moreover, Plaintiff's only conclusory allege that it suffered damages "in an amount to be proven at trial." Compl. ¶77. Its failure to provide a detailed damage assessment requires dismissal of Plaintiff's claim for tortious interference of APA and TSA. *See Bindagraphics, Inc.*, 377 F. Supp. 3d at 576.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss Plaintiff's Complaint in its entirety, *with prejudice*, together with such other and further relief as this Court deems just and proper.

Dated: July 10, 2025

/s/ *Jonathan A. Grasso*
Jonathan A. Grasso, 19278
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401
(443) 569-5972
jgrasso@yvslaw.com

-and-

S. Jason Teele (*Admitted Pro Hac Vice*)
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, New Jersey 07102
(973) 643-4779
steele@sillscummis.com

-and-

Randy Moonan (*Admitted Pro Hac Vice*)
Sills Cummis & Gross P.C.
101 Park Avenue, 28th Floor
New York, New York 10178
212-500-1557
rmoonan@sillscummis.com

*Counsel for Alliance Entertainment Holdings Corporation and Alliance Entertainment, LLC*

CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of July 2025, notice of filing the Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint was served by CM/ECF to those parties listed on the docket as being entitled to such electronic notices, which parties are identified on the attached service list.

/s/ Jonathan A. Grasso
Jonathan A. Grasso

**The following parties received CM/ECF notice of the filing:**

Peter J. Artese, Esquire
(peter.artese@us.dlapiper.com)
Counsel for Sparkle Pop LLC
DLA Piper LLP
650 South Exeter Street, Suite 1100
Baltimore, Maryland 21202

Ellen E. Dew, Esquire
(ellen.dew@us.dlapiper.com)
Counsel for Sparkle Pop LLC
DLA Piper LLP
650 South Exeter Street
Baltimore, Maryland 21202

Jonathan A. Grasso, Esquire
(jgrasso@yvslaw.com)
Counsel for Alliance Entertainment
YVS Law, LLC
185 Admiral Cochrane Drive, Suite 130
Annapolis, Maryland 21401

Randy Moonan, Esquire
(rmoonan@sillscummis.com)
Counsel for Alliance Entertainment
Sills Cummis & Gross P.C.
101 Park Avenue, 28th Floor
New York, New York 10178

Jonathan Gary Rose, Esquire
(jonathan.rose@us.dlapiper.com)
Counsel for Sparkle Pop LLC
DLA Piper LLP US
500 Eight Street, NW
Washington, D.C. 20004

Jordan Rosenfeld, Esquire
(jordan.rosenfeld@saul.com)
Counsel for Debtors
Saul Ewing LLP
1001 Fleet Street, 9th Floor
Baltimore, Maryland 21202-4359

S. Jason Teele, Esquire
(steele@sillscummis.com)
Counsel for Alliance Entertainment
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, New Jersey 07102